**In re GC COMPANIES, INC., et al., Debtors.**

**Donald F. Walton, Acting United States Trustee for Region 3, Appellant,**

v.

**Post–Confirmation Committee of Unsecured Creditors of GC Companies, Inc., et al., Appellee,**

**Post–Confirmation Committee of Unsecured Creditors of GC Companies, Inc., et al., Cross–Appellant,**

v.

**Donald F. Walton, Acting United States Trustee for Region 3, Cross–Appellee,**

**Bankruptcy Nos. 00–3897 to 00–3927. Nos. CIV.A.02–0314–JJF, CIV.A.02–0315–JJF.**

United States District Court, D. Delaware.

Aug. 12, 2003.

228

Donald F. Walton, Acting United States Trustee, Robert J. Schneider, and Joseph J. McMahon, of the Office of the United States Trustee, District of Delaware, Wilmington, DE, for Appellant/Cross–Appellee.

Laura Davis Jones, and Bruce Grohsgal, of Pachulski, Stang, Ziehl, Young & Jones P.C., Wilmington, Delaware. Of Counsel: Marc A. Beilinson, Jeremy V. Richards, and Harry D. Hochman, of Pachulski,

Stand, Ziehl, Young & Jones P.C., Los Angeles, CA, for Appellee/Cross–Appellant.

David M. Fournier, of Pepper Hamilton LLP, Wilmington, DE, Daniel M. Glosband, P.C. of Goodwin Procter LLP, Boston, MA, for Debtors.

## MEMORANDUM OPINION

FARNAN, District Judge.

Before the Court is an appeal by Donald F. Walton, Acting United States Trustee for Region 3 (the "Trustee") and a cross-appeal by the Post–Confirmation Committee of Unsecured Creditors of GC Companies, Inc. (the "Committee") from the March 18, 2002 Order (the "Order") of the Bankruptcy Court. By its Memorandum Opinion and Order, the Bankruptcy Court confirmed the Debtors' First Amended Joint Plan of Reorganization (the "Plan") and held, among other things that only the payment of a specific Debtor's "legal obligations" to non-debtor third parties may serve as "disbursements" for purposes of calculating the quarterly fee payable in that Debtor's case to the Trustee pursuant 28 U.S.C. § 1930(a)(6). *In re GC Companies, Inc.*, 274 B.R. 663, 674 (Bankr.D.Del. 2002). Consistent with its definition of the term "disbursement," the Bankruptcy Court ordered that the fees due the Trustee must be recalculated based on a reapportionment of the disbursements from GC Companies, Inc. ("GCX"), the entity which made substantially all of the company-wide payments, to its subsidiary Debtors, to the extent that GCX's disbursement satisfied a legal obligation of one of its subsidiaries. *Id.* at 675. By the same Memorandum Opinion and Order, the Bankruptcy Court also approved the Debtors' substantive consolidation, but denied the request of the Debtors and the Committee to make the substantive consolidation retroactively ef-

fective from the Petition Date. *Id.* at 671–672. For the reasons discussed, the Court will affirm the Bankruptcy Court's Order to the extent that it (1) held that each individual Debtor must calculate quarterly fees based upon payments made by that Debtor or for that Debtor by another entity and (2) did not make substantive consolidation retroactive to the Debtors' Petition Date. However, the Court will reverse the Bankruptcy Court's Order to the extent that it held that quarterly fees are to be calculated solely on disbursements made on a Debtor's "legal obligations" to non-debtor third parties. This matter will be remanded to the Bankruptcy Court for further proceedings and/or submissions related to the recalculation of quarterly fees consistent with this Memorandum Opinion.

## I. The Parties' Contentions

By its appeal, the Trustee contends that the Bankruptcy Court's definition of the term "disbursements" is erroneous. Specifically, the Trustee contends that the Bankruptcy Court correctly held that every Debtor must report individually on the disbursements made in its case, and must pay quarterly fees on disbursements in each case regardless of whether the Debtor made the payment or some other entity actually made the payment for that Debtor. However, the Trustee contends that the Bankruptcy Court erred when it limited the term "disbursements" to the payments of a debtors' "legal obligations" to non-debtor third parties. According to the Trustee, the term "disbursements" should include the payment of all expenses incurred in the operation of a debtor's business, and not just "legal obligations."

By its cross-appeal, the Committee likewise challenges the Bankruptcy Court's definition of the term "disbursements." According to the Committee, the Bankruptcy court erred by failing to hold that a disbursement is a cash payment by a debtor, and that the Debtors in this case owed fees to the Trustee based on disbursements actually made by each Debtor. Specifically, the Committee contends that the only material payments in this case were made by GCX or General Cinema Theaters, Inc. ("GCT"), and these payments should not be allocated to the other Debtors to increase the amount of quarterly fees due to the Trustee. The Committee also contends that the Bankruptcy Court erred in declining to deem the substantive consolidation effective as of the Petition Date, thereby rendering moot any issue of allocating disbursements among the separate entities.

## II. Standard of Review

The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir.1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's findings of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 101–02 (3d Cir.1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews a Bankruptcy Court decision on a *de novo* basis in the first instance. *In re Telegroup,* 281 F.3d 133, 136 (3d Cir.2002).

## III. DISCUSSION

### A. *Whether The Bankruptcy Court Erred In Defining The Term "Disbursements"*

■ After reviewing the legal conclusions of the Bankruptcy Court under a plenary standard of review, the Court concludes that the Bankruptcy Court correctly concluded that the term "disbursements" is not limited solely to payments made by each Debtor. In *Genesis Health Ventures, Inc. v. Walton,* Civ. Act. No. 01–0853–JJF, mem. order at 4–5 (D.Del. Nov. 15, 2002), the Court concluded that the term "disbursements ... includes the payment of operating expenses incurred by a debtor ... regardless of whether the debtor or some other entity actually pays the expenses." *Id.* at 5. As the Court recognized, an interpretation of the word "disbursement" without reference to the identity of the payor is supported by other courts who have considered this issue. *Id.* at 5 & n. 2 (collecting cases). Accordingly, the Court declines to adopt the Committee's position, which would limit the term "disbursements" to sums paid by the Debtor.

■ As for the Bankruptcy Court's conclusion that the term "disbursements" is limited to the "legal obligations" of a debtor, the Court concludes that this conclusion is erroneous. The Court can find no support for imposing such a limitation on the term "disbursements." Rather, courts have consistently recognized that the term "disbursements" is defined broadly and encompasses ordinary operating expenses. *See e.g. Walton v. Jamko,*

*Inc. (In re Jamko, Inc.),* 240 F.3d 1312, 1313, 1316 (11th Cir.2001); *Robiner v. Danny's Mkts., Inc. (In re Danny's Mkts., Inc.),* 266 F.3d 523, 526 (6th Cir.2001). This definition is consistent with the plain meaning of the term "disbursement" as an "expenditure."[1] *Webster's New World Dictionary,* 3d College Ed. at 390 (Simon & Schuster 1988). Further, even if the Court were to conclude that the term "disbursements" was ambiguous, such that it was proper to consider the legislative history, the Court would conclude that the legislative history supports a broad definition of "disbursements" which is not limited to a debtor's "legal obligations." Indeed, Congress considered and rejected basing fees on "a debtor's liabilities,"[2] a term which includes "anything for which a person is legally bound or obligated." *See Webster's New World Dictionary* at 778 (defining "liabilities" and "liable").

The Committee appears to agree with the Trustee that the term "disbursements" should not be limited to a debtor's legal obligations; however, the Committee contends that defining "disbursements" with reference to expenses impermissibly introduces the accrual method of accounting into the calculation of quarterly fees, without regard to actual payments. On the other hand, as the Trustee points out, quarterly fees are not based on non-cash items like depreciation and are not based on the mere incurrence of an expense. Rather, it is the ultimate payment of the expense by any entity on behalf of a debtor that is the subject of quarterly fees. *See e.g. In re Charter Behavioral Health Systems, LLC,* 292 B.R. 36, 47 (Bankr.

---

1. The term "expenditure" is further defined as "an expense," which is further defined as a "(a) charge[ ] or cost[ ] met with in running a business, doing one's work, maintaining property, etc. (b) money to pay for these charges." *Webster's New World Dictionary* at 478. This definition of the word "expense" is also consistent with legal usage of that term. *See Black's Law Dictionary* 577 (6th ed.1990).

2. *See* H.R.Rep. No. 764, 99th Cong., 2nd Sess. 26 (1986), 1986 U.S.C.C.A.N. 5239.

D.Del.2003) (Walrath, J.) (recognizing that the term "expense" may be used to define "disbursements" even though the term is used in accrual accounting). As the court in *Charter Behavioral* explained, "In non-accounting jargon, an expense is a disbursement. Therefore, we conclude that section 1930(a)(6) requires a determination of *whose expense is being paid* by the disbursement of cash, regardless of who actually writes the check or when it is posted on the Debtors' accounting records." *Id.* at 47–48 (recognizing that the term "disbursements" extends beyond the entity with the legal obligation to pay a debt and may include the one who benefitted by the expense, but was not legally obligated to pay it) (citations omitted) (emphasis added).

■ The Committee contends that its use of a centralized cash system renders this definition of the term "disbursements" unworkable. While the use of a centralized cash system may make it more difficult to calculate quarterly fees, the Court does not believe the use of such a system justifies a departure from the way the term "disbursements" is defined or the way in which quarterly fees are calculated.[3] Accordingly, the Court will reverse the Bankruptcy Court's Order insofar as it limited the term "disbursements" to the legal obligations of a debtor, and remand this case for the recalculation of quarterly fees.

**B.** *Whether The Bankruptcy Court Erred In Declining To Make Its Substantive Consolidation Of The Cases Retroactive From The Petition Date*

By its cross-appeal, the Committee contends that the Bankruptcy Court erred by failing to make its substantive consolidation of the cases effective as of the Petition Date. The Committee points out that the Courts of Appeal for the Ninth and Sixth Circuits have held that substantive consolidation, by its nature, is effective as of the filing date, without any need to make a special showing. *See e.g. In re Bonham,* 229 F.3d 750, 771 (9th Cir.2000); *In re Baker & Getty Financial Services, Inc.,* 974 F.2d 712, 720 (6th Cir.1992). Although the Third Circuit has not addressed this issue, the Committee advocates its adoption.

■ In addition, the Committee maintains that the Bankruptcy Court erroneously applied the balancing test for *nunc pro tunc* relief set forth in *In re Auto–Train Corp., Inc.,* 810 F.2d 270 (D.C.Cir. 1987). Under the *In re Auto–Train* test, retroactive substantive consolidation is only appropriate if "the use of *nunc pro tunc* relief yields benefits greater than the harm it inflicts." 810 F.2d at 277. Specifically, the *Auto–Train* court required the proponent of *nunc pro tunc* consolidation to show that the relief achieves some benefit or avoids some harm. Following this

---

**3.** In reaching its conclusions, the Court is not adopting the method utilized by the Trustee to determine the quarterly fees due in this case, namely the use of the Debtors' tax returns. Rather, as the Bankruptcy Court found, the Debtors have the records and ability to determine whose expense was being paid by GCX or GCT. *In re GC Companies,* 274 B.R. at 667–669 (finding that Debtors maintained intercompany accounts between GCX or GCT and the individual theater units which tracked allocation of expenses and the like). As such,

the Court concludes that the Debtors should be able to provide the Trustee with this information so that the quarterly fees can be properly calculated, and the Committee has not persuaded the Court otherwise. *See e.g. In re Charter Behavioral,* 292 B.R. at 48 & n. 14 (rejecting calculation based on tax returns because tax returns were prepared on an accrual basis and requiring debtor to provide trustee with information on whose expense was being paid based on debtor's internal records).

showing, a creditor or potential preference holder may challenge that relief by showing that it relied on the separate credit of one of the entities to be consolidated and it will be harmed by the shift in filing dates. *Id.*

■ In its Memorandum Opinion, the Bankruptcy Court did not expressly apply the *Auto–Train* test for *nunc pro tunc* consolidation, presumably because that test refers to the prejudice to creditors of the estate, and the Trustee is not a creditor. Rather, the Bankruptcy Court considered the principles of *nunc pro tunc* relief generally and applied a balancing test similar, but not identical, to that developed in *Auto–Train* for creditors. The Bankruptcy Court weighed the equities of the requested relief and found that the Trustee would be deprived of substantial quarterly fees, while the estate's only benefit would be "the ability to evade ... payment of quarterly fees" and the estate's only harm would be "the obvious decrease in assets available for distribution as a result of the quarterly fee obligations." *In re GC Companies, Inc.*, 274 B.R. at 671.

Reviewing the Bankruptcy Court's factual conclusions under a clearly erroneous standard and its choice of legal precepts and its application of those precepts to the historical facts in the case under a plenary standard of review, the Court concludes that the Bankruptcy Court did not err in denying to make substantive consolidation retroactive.[4] Absent guidance from the Third Circuit, the Court declines to adopt the approaches of the Sixth and Ninth

Circuits. As for the Bankruptcy Court's application of the balancing test, the Court concludes that the Bankruptcy Court correctly weighed the parties' interests and equities and concluded that retroactive substantive consolidation was not appropriate on the facts of this case. Accordingly, the Court will affirm the Bankruptcy Court's decision to deny retroactive substantive consolidation.

## IV. CONCLUSION

For the reasons discussed, the Court will affirm the Bankruptcy Court's Order to the extent that it (1) held that each Debtor must calculate quarterly fees based upon payments made by that Debtor or for that Debtor by another entity, and (2) denied retroactive substantive consolidation. However, the Court will reverse the Bankruptcy Court's Order to the extent that it defined disbursements solely with respect to the "legal obligations" of the Debtors. This matter will be remanded to the Bankruptcy Court for further proceedings and/or submissions regarding the recalculation of quarterly fees consistent with this Memorandum Opinion.

---

**4.** The Trustee urges the Court to apply the abuse of discretion standard, but the Court believes that the grounds raised on appeal by the Committee, i.e. that the bankruptcy court failed to adopt decisions of other Circuits applying substantive consolidation as of the Petition Date without the need to demonstrate special circumstances, and the application of the *nunc pro tunc* test to the facts was flawed, are more appropriately viewed as mixed questions of law and fact. However, application of the abuse of discretion standard would not alter the Court's conclusion that the Bankruptcy Court correctly denied retroactive substantive consolidation.